**Emily D. Leahy GUINEY, Executrix of the Estate of Arthur Hamilton Leahy, deceased**

v.

**UNITED STATES of America.**

Civ. No. 18713.

United States District Court

D. Maryland.

Feb. 4, 1969.

William Graham Boyce, Jr., Musgrave, Preston & Boyce, Baltimore, Md., for plaintiff.

Barry E. Fink, Atty., Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Donald R. Anderson, Atty., Dept. of Justice, Washington, D. C., Stephen H. Sachs, U. S. Atty., Alan B. Lipson, Asst. U. S. Atty., Baltimore, Md., on brief), for defendant.

THOMSEN, Chief Judge.

In this action for the recovery of federal estate taxes, the question presented is whether the interest which passed to the widow under Item Second of the will of Arthur Hamilton Leahy qualifies for the marital deduction under section 2056(b) (5) of the Internal Revenue Code of 1954. All the essential facts have been stipulated, and the case has been tried before the court without a jury.

Item Second of the will reads:

"*SECOND*: If my wife, Maury D. Leahy, survives me, I direct my Executor or Co-Executors, hereinafter named, to set aside a portion of my estate equal in value to one-half of the value of my adjusted gross estate (gross taxable estate less funeral and administration expenses and claims and debts but before the deduction of estate or inheritance taxes) as finally determined for Federal Estate tax purposes, less the value of all interests in property, if any, which pass or have passed to my wife, under other provisions of this Will or otherwise than under the Will, but only to the extent that such interests are for the purposes of the Federal estate tax included in determining my gross taxable estate and allowed as a marital de-

duction. All values shall be those finally determined for Federal estate tax purposes.

"I give, devise and bequeath the said portion of my estate to the Trustee or Co-Trustees, hereinafter named, IN TRUST, NEVERTHELESS, to hold, manage, invest and reinvest the same, to collect the income, and to pay over the net income in monthly installments, to my wife, Maury D. Leahy, during her life, and to pay out of the principal to my said wife such sum or sums, from time to time, as my wife shall demand in writing, but not exceeding the sum of Three Thousand ($3,000.00) Dollars in any one calendar year, and upon her death to transfer, convey and pay over the principal to or for the benefit of such person or persons or corporation, and in such lawful interests or estates, whether absolute or in trust, as my wife by her Last Will and Testament appoint. If the power of appointment is for any reason not validly exercised by my wife in whole or in part, then upon her death such portion, or all of the principal of the trust of such interests or estate therein, as shall not have been validly appointed by her, shall be added by my Trustees to the trust created by item *THIRD*, hereof to be held as a part of the trusts hereby created, subject to all the terms and provisions thereof. However, I want to make it clear that I am giving my wife a general power of appointment over this trust in order that one-half of my estate may qualify for the marital deduction, and if any sentence or sentences hereinbefore or hereafter written contravene the policy of the Federal Government in granting the marital deduction, such sentence or sentences shall be null and

void, as it is fully my intention to take advantage of the marital deduction as provided by the Internal Revenue Code of 1954, or amendments made thereafter.

"Notwithstanding anything to the contrary contained in this Will, I direct that in establishing this trust for my wife there shall not be allocated to the trust any property or the proceeds of any property which would not qualify for the marital deduction allowable in determining the Federal Estate Tax on my estate.

"I authorize my said wife to renounce this bequest in whole or in part."

The testator died in October 1962. The widow did not renounce the bequest and the trust provided for in Item Second was established.

Upon audit, the Commissioner of Internal Revenue held that the value ($72,710.64) of the surviving spouse's interest in that trust did not qualify for the marital deduction because under the law of Maryland the language used did not permit the wife to appoint the trust corpus to herself or to her estate, as required by section 2056(b) (5) and the related Treasury Regulations.[1]

Counsel for plaintiff has filed no brief, but argued at the hearing that the gift in trust under Item Second of the will qualifies for the marital deduction (1) because the provisions of Item Second, considered as a whole, with due regard to the intention of the testator, gave the wife the power by her last will and testament to appoint the trust property to herself or her estate; and (2) because the wife's absolute right of withdrawal of $3,000 per year entitles the estate to a marital deduction for the present value of that power of invasion.

1. The disqualification of this marital trust property for marital deduction purposes increased the estate's federal estate tax liability by $12,467.02. As a result of this and other adjustments not here in controversy (some of which were in taxpayer's favor), the Commissioner assessed an estate tax deficiency on October 28, 1966, in the amount of $7,487.41 and interest in the amount of $1,227.52. The estate paid the deficiency but has failed and refused to pay the assessed interest, which is the subject of a counterclaim by the government.

(1)

■ The statute,[2] the regulations [3] and binding authority, Pierpont's Estate

v. C. I. R., 336 F.2d 277 (4 Cir. 1964), make it clear that when a testamentary gift is made to a surviving wife of an

2. Internal Revenue Code of 1954:

"Sec. 2056. BEQUESTS, ETC., TO SURVIVING SPOUSE.

"(a) *Allowance of Marital Deduction.*— For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(b) *Limitation in the Case of Life Estate or Other Terminable Interest.*—

"(1) *General rule.*—Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

"(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

"and no deduction shall be allowed with respect to such interest (even if such deduction is not disallowed under subparagraphs (A) and (B))—

"(C) if such interest is to be acquired for the surviving spouse, pursuant to directions of the decedent, by his executor or by the trustee of a trust.

"* * * *

"(5) *Life estate with power of appointment in surviving spouse.*—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not

in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

"(A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

"(B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.

"This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

"* * * *"

(26 U.S.C., 1964 ed., section 2056)

3. Treasury Regulations on Estate Tax (1954 Code):

"Sec. 20.2056(b)–5 *Marital deduction; life estate with power of appointment in surviving spouse.*

"* * * *

"(e) *Application of local law.* In determining whether or not the conditions set forth in paragraph (a) (1) through (5) of this section are satisfied by the instrument of transfer, regard is to be had to the applicable provisions of the law of the jurisdiction under which the interest passes and, if the transfer is in trust, the applicable provisions of the law governing the administration of the trust.

"* * * *"

"* * * *

"(g) *Power of appointment in surviving spouse.* (1) The conditions set forth in paragraph (a) (3) and (4) of this section, that is, that the surviving spouse must have a power of appointment exercisable in favor of herself or her estate and exercisable alone and in all events, are not met unless the power of the surviving spouse to appoint the entire interest or a specific portion of it falls within one of the following categories:

"(i) A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as, for example, an unlimited power to invade); or

"(ii) A power so to appoint exercisable in favor of her estate. Such a power, if exercisable during life, must be fully

equitable life estate, coupled with a power of appointment by will, the power of appointment does not enable the wife's interest to qualify for the marital deduction unless the wife has the power to appoint the entire interest to herself or to her estate.

In most, if not all, jurisdictions other than Maryland the power given the wife by Item Second of Leahy's will would be considered a general power, entitling the wife to appoint the trust property to herself or to her estate.

 In this case, however, the court must apply the law of Maryland in determining the extent of the power given to the wife. *Pierpont,* supra, and cases cited therein at page 281. See also section 2056(b)–5(e) of the Regulations. And, as was stated in *Pierpont,* "Maryland courts have fashioned a rather strange animal of the general power of appointment where the donor and donee are separate entities and where the donee has not been given the specific power to appoint to his own use. While calling this power a general power of appointment, it is a creature apart from the general power of appointment found in the other states." 336 F.2d at 283.

The majority opinion in *Pierpont* carefully reviewed the Maryland cases dealing with powers of appointment and noted that the "crucial question of whether an unlimited testamentary power of appointment gives the holder power to appoint to his estate has never been directly passed on by the Maryland Court of Appeals in a factual setting similar to this case. Nevertheless, the question has been discussed in numerous decisions and, except in one circumstance, the invariable conclusion has been that it does not." 336 F.2d at 282.

The leading case is Balls v. Dampman, 69 Md. 390, 16 A. 16, 1 L.R.A. 545 (1888), where the Court of Appeals of Maryland said: "Mrs. Balls had, under her husband's will, only the power to appoint—that is, to name by will—the person or persons to whom the property should go; and she had no authority to devise it for the payment of her debts, —that is, to encumber or consume it altogether for her own use. The construction insisted on would, if adopted, practically convert her from a mere life-tenant into an owner of the fee." 69 Md. at 394–395, 16 A. at 18.

After discussing Balls v. Dampman, Judge Bell, speaking for the majority in *Pierpont,* said:

"The basic reasoning of the court that the holder of a so-called general power of appointment, absent specific enabling language, may not divert property subject to the power to his own use has been reaffirmed in subsequent cases, although in none was the point required for decision. See Lamkin v. Safe Deposit & Trust Co. of Baltimore, 192 Md. 472, 64 A.2d 704 (1949); Connor v. O'Hara, 188 Md. 527, 53 A.2d 33 (1947); Mercantile Trust Co. v. Bergdorf & Goodman Co., 167 Md. 158, 173 A. 31, 93 A.L.R. 1205 (1934); Pope v. Safe Deposit & Trust Co. of Baltimore, 163 Md. 239, 161 A. 404 (1932); Prince de Bearn v. Winans, 111 Md. 434, 74 A. 626 (1909); Price v. Cherbonnier, 103 Md. 107, 63 A. 209 (1906). There has

---

exercisable at any time during life, if exercisable by will, must be fully exercisable irrespective of the time of her death (subject in either case to the provisions of § 20.2056(b)–3, relating to interests conditioned on survival for a limited period); or

"(iii) A combination of the powers described under subparagraphs (i) and (ii) of this subparagraph. For example, the surviving spouse may, until she attains the age of 50 years, have a power to appoint to herself and thereafter have a

power to appoint to her estate. However, the condition that the spouse's power must be exercisable in all events is not satisfied unless irrespective of when the surviving spouse may die the entire interest or a specific portion of it will at the time of her death be subject to one power or the other (subject to the exception in § 20.2053(b)–3, relating to interests contingent on survival for a limited period). * * *"

26 C.F.R., section 20.2056–(b)–5

been a retreat from this doctrine where the donor and donee are one and the same person. Wyeth v. Safe Deposit & Trust Co. of Baltimore, 176 Md. 369, 4 A.2d 753 (1939). This holding was contrary to the language contained in Mercantile Trust Co. v. Bergdorf & Goodman Co., supra, and Pope v. Safe Deposit & Trust Co. of Baltimore, supra, but upon reflection, it will be seen that it was not at odds with the basic rationale of Balls v. Dampman, supra. As the Court pointed out: '[T]he donor and the donee of the power being the same person, the intention of one is of necessity the intention of the other. * * * [T]he rule excluding one's creditors from appointment was apparently adopted to prevent frustration of the donor's intent * * *.' 4 A.2d at 756. Balls v. Dampman, supra, has been cited and approved in cases subsequent to Wyeth and must be deemed still viable." 336 F.2d at 283.

The decision in *Pierpont* is supported by Leser v. Burnett, 46 F.2d 756 (4 Cir. 1931), decided under the Revenue Act of 1921,[4] and by the opinion of the Tax Court in Estate of William C. Allen, 29 T.C. 465 (1957), decided under the Revenue Act of 1939, which employed language similar to the 1954 Act.

■ In the instant case plaintiff relies upon the following statement of the testator's intention contained in the third unnumbered paragraph of Item Second:

"However, I want to make it clear that I am giving my wife a general power of appointment over this trust in order that one-half of my estate may qualify for the marital deduction, and if any sentence or sentences hereinbefore or hereafter written contravene the policy of the Federal Government in granting the marital deduction, such sentence or sentences shall be null and void, as it is fully my intention to take advantage of the marital deduction as provided by the Internal Revenue Code of 1954, or amendments made thereafter."

This Court must consider, therefore, whether that statement, read in connection with the other provisions of Leahy's will, gives his wife the power to appoint to her estate.

The controlling principles are clearly stated in *Pierpont*:

"Finally, we consider the estate's argument that by our holding today we frustrate Pierpont's clearly established dispositive intent. That he had an intention to take advantage of the marital deduction is doubtlessly clear; that he entertained the intention to give his widow the power to appoint to her estate is, at best, disputable. But even if Pierpont intended that Lallah might appoint to her estate, he failed to employ the necessary language which would have enabled her to do so under Maryland law. As recently observed by the Supreme Court: 'The achievement of the purposes of the marital deduction is dependent to a great degree upon the careful drafting of wills.' Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1964). * * *" 336 F.2d at 283.[5]

Applying those principles to the will in this case, the Court must come to the

---

4. The question in Leser v. Burnett was whether the power of appointment given to the wife in that case was a general power of appointment, within the meaning of section 402(e) of the Revenue Code of 1921, so as to require that the trust property be included in the wife's estate. Thus, the issue and the statute were both different from those in the present case, but Judge Parker's discussion of the Maryland law supports the conclusion of the majority in *Pierpont*, as Judge Bell noted. 336 F.2d at 282, 283.

5. Judge Bryan, dissenting in *Pierpont*, noted that neither the tax statute nor the Maryland decisions require that the word "estate" appear in the clauses of the will creating the power of appointment, and said: "No more is demanded than that the right be expressed. In my judgment the will contains the requisite expression." 336 F.2d at 284.

same conclusion. The statement in Leahy's will, quoted above, clearly expressed an intention to take advantage of the marital deduction. The Fourth Circuit inferred such an intention in *Pierpont*. But there is nothing in Leahy's will to show that either Leahy or the draftsman of his will ever considered the question whether the wife should have the power to appoint to her estate. Such a power would not only make the corpus of the trust property at the time of the wife's death subject to the claim of her creditors, but would also make the corpus of the trust property a part of her estate for federal estate tax purposes. It may be that the testator would not have objected to those results. On the other hand, it may be that he would not have desired them. At any rate, it does not appear that the testator ever considered them. Certainly he failed to employ the necessary language which would have enabled his wife to appoint to her estate under the Maryland law.

The will was drawn by a Maryland lawyer and executed and probated in Maryland. The testator's statement that he was giving his wife a general power of appointment should therefore be construed to mean a general power of appointment as that term is construed by the Maryland law. Under that law, even though the donee of a power such as Leahy gave his wife cannot appoint to her estate, the power is still called a "general power", as the cases cited in *Pierpont* show. The provision "if any sentence or sentences hereinbefore or hereafter written contravene the policy of the Federal Government in granting the marital deduction, such sentence or sentences shall be null and void" would suffice to *eliminate* from the will any provision which would prevent the trust property from qualifying for the marital deduction; it cannot properly be construed to *introduce* into the will a provision which is necessary to enable the trust to qualify, but which would have certain effects that neither the testator nor the draftsman of his will appear to have considered. However unfortunate the result may be in this case, the Court cannot ignore the test specified by the Fourth Circuit, based upon a principle recently enunciated by the Supreme Court. Leahy's will did not give his wife power to appoint the remainder of the trust property to herself or to her estate.[6]

(2)

 Counsel for plaintiff argued alternatively that the wife's absolute right of withdrawal of $3,000 per year entitles the estate to a marital deduction for the present value of that power of invasion. In reply, the government argued (a) that the present value of the surviving spouse's power to invade the corpus of the marital trust, which is limited to a maximum of $3,000 for each calendar year of her life, does not qualify for the marital deduction under section 2056, I.R.C. of 1954, because it is a terminable interest, and (b) that the point was not timely raised, and is therefore barred by sections 6511, 6532 and 7422, I.R.C. of 1954, and section 301.6402–2(b), T.R. on Procedure and Administration (1954 Code).

The claim for refund filed by plaintiff was so general that it is hard to tell what point plaintiff intended to rely on. Since, however, it is so clear that the present value of the wife's power to invade the corpus does not qualify for the marital deduction, because it is a "terminable interest", the Court need not pass on the procedural question.

Section 2056(b) (1), see note 2 above, disqualifies for the marital deduction "terminable" interests passing from a

---

6. This conclusion is supported by a discussion of the problem in the publication of the Maryland State Bar Association entitled "Wills, Estates and Trusts," No. 1, October 1, 1967, edited by competent tax practitioners. The discussion therein calls attention to some of the problems which might arise if a court followed a natural inclination to try to protect the widow from what may have been careless work on the part of the husband's lawyer.

decedent to his surviving spouse. That section was carefully analyzed in Allen v. United States, 359 F.2d 151 (2 Cir. 1962). The Court said:

"While section 2056(a) sets out the basic rule for determining the marital deduction, section 2056(b) (1) disqualifies a terminable interest passing from a decedent to his surviving spouse. A terminable interest is defined, in general, as one which possesses the three characteristics found in sections 2056(b) (1) (A) and (B). First, it must be an interest in property which will terminate upon the occurrence or non-occurrence of an event or upon the lapse of time. Second, another interest in the same property must pass or have passed to someone other than the spouse from the decedent for less than an adequate consideration. And third, such other person must be able to possess or enjoy a part of such property upon the termination of the spouse's interest. With certain exceptions not relevant to this case, the interest bequeathed to a spouse qualifies for the marital deduction unless all three of these characteristics are present." 359 F.2d at 154.

The interest of the wife under Leahy's will possessed all three characteristics referred to in the above passage.

First, the wife had the immediate power to invade the corpus only up to $3,000. In order to invade for a second $3,000 she was required to live until the next calendar year. Thus, as to all but the first $3,000, the spouse's power to invade terminated upon her death.

Second, upon the wife's death the corpus of the marital trust must pass either to a beneficiary named in the will or to such persons as may be appointed by the wife in the exercise of her power of appointment. In the latter event, the Maryland law regards the appointed property as being transferred from the donor to the appointed person and the donee to be acting as agent for the donor. In this case, there is no question that the property subject to the marital deduction was transferred for less than adequate consideration.

Third, upon the termination of the spouse's power to invade corpus by her death, the remaining corpus would be possessed and enjoyed by either the appointed beneficiaries or the beneficiaries named by the donor to take in the event of non-exercise.

The policy behind the terminable interest rule was succinctly stated by Judge Kaufman, speaking for the Second Circuit, in Allen v. United States, supra, as follows:

"When Congress sought to equalize the tax burdens of estates in community property and common law jurisdictions by utilizing the device of the marital deduction as modified by the terminable interest rule, it chose a technique which required the draftsmen of testamentary instruments to be meticulous in adhering to the formal requirements of section 2056. And, while the terminable interest rule is, indeed, a thicket, the Congressional purpose in disqualifying terminable bequests was certainly not to elevate form above substance. It was, instead, to prevent the wholesale evasion of estate taxes which the skillful employment of terminable interests could have easily achieved. For example, but for the terminable interest rule, a husband in a common law jurisdiction could bequeath a life interest in property to his wife which could qualify for the marital deduction and thus neither be taxed in his nor in her estate. Although the terminable interest rule is aimed primarily at preventing such results, see Sugarman, Estate and Gift Tax Equalization, 36 Calif.L.Rev. 223, 230–231, 236–238 (1948), it nevertheless does, at times, ensnare bequests which were designed to accomplish objectives other than the avoidance of estate taxation. For this reason, the Supreme Court has observed, in its most recent pronouncement on the ter-

minable interest rule, that '[t]he achievement of the purposes of the marital deduction [remains] * * * dependent to a great degree upon the careful drafting of wills.' Jackson v. United States, 376 U.S. 503, 511, 84 S.Ct. 869, 873, 11 L.Ed.2d 871 (1963)." 359 F.2d at 154–154.

Permitting a marital deduction for the present value of the wife's restricted power to invade corpus would accomplish the very thing that the terminable interest rule was designed to avoid.

The present value of the wife's power to invade the corpus of the marital trust does not qualify for the marital deduction. The government concedes, however, that the right of the wife to withdraw the $3,000 for the first year was an absolute interest, which entitled the estate to a marital deduction in the amount of $3,000. The tax credits resulting therefrom should be calculated by the Service and will be allowed by the Court as a credit against the government's counterclaim for $1,227.52 for assessed and unpaid interest.

Counsel should agree upon a judgment order.