## UNITED STATES OF AMERICA *v.* WILLIAM W. BALDWIN ET AL.

[Misc. No. 3, September Term, 1978.]

*Decided October 10, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, LEVINE, ELDRIDGE, ORTH and COLE, JJ.

*Richard Farber,* with whom were *M. Carr Ferguson, Assistant Attorney General, Gilbert E. Andrews, Crombie J. D. Garrett* and *Russell T. Baker, Jr., United States Attorney,* on the brief, for appellant.

*Herman B. Rosenthal,* with whom were *Robert P. Mittelman, Semmes, Bowen & Semmes* and *Lawrence Perin* on the brief, for appellee Mercantile-Safe Deposit and Trust Company. No brief filed on behalf of other appellee.

MURPHY, C. J., delivered the opinion of the Court.

The United States instituted a civil action in the United States District Court for the District of Maryland on December 19, 1975 to enforce federal tax liens on the assets of a trust of which appellee Mercantile-Safe Deposit and Trust Company (the Bank) is the trustee, and to obtain judgment for income taxes, with penalties and interest, against appellee William W. Baldwin. On September 29, 1976, the court granted the Bank's motion to dismiss the complaint for failure to state a claim upon which relief could be granted, holding that under Maryland law Baldwin had retained only a special or limited power of appointment, and that he did not therefore have "property" or "rights to property" in the trust corpus to which the tax liens could attach. The government appealed to the United States Court of Appeals for the Fourth

Circuit. Concluding that "there can be no conclusive resolution of this litigation without the aid of the Court of Appeals of Maryland," the Fourth Circuit certified for our consideration the following question of law and statement of relevant facts pursuant to the Uniform Certification of Questions of Law Act, Maryland Code (1974) §§ 12-601 to 12-609 of the Courts and Judicial Proceedings Article:

"The question on appeal is whether the settlor of an irrevocable trust, reserving to himself only the right to receive, during his lifetime, the income from the investments and other personalty of the trust, has such an estate in the corpus thereof as constitutes 'property and rights to property' subject to the lien of the United States for taxes owing by the settlor on such income. Section 6321, Internal Revenue Code of 1954.* Adjectival terms of the instrument in suit are that the settlor retains the power to change the trustee — even to himself, thus including his administration of the trust — and to appoint by his will those who should enjoy the remainder estate in the trust corpus after his death, failing which the remaindermen would be those specified in the trust instrument.

"Whether the life tenant subject to these restrictions, but possessed of these privileges, is seised of property or property rights is a determination for the State judiciary exclusively."

* * *

"While the facts appear for the most part in the foregoing submission of the question, a complete understanding of them requires this amplification: the settlor or creator of the trust is William W. Baldwin of New York City; the indenture is dated December 10, 1935; the trustee at that time was the Safe Deposit & Trust Company of Baltimore, now known as the Mercantile-Safe Deposit and Trust Company; the outstanding taxes against Baldwin

are on income assessed for certain years between 1950-1959, inclusive, amounting with penalties and assessed interest, less payments and credits, to a grand total of $69,371.00 as of the commencement of this litigation; until his retirement in 1973, the settlor had paid the taxes annually accruing thereon from his current income; and the capital of the trust as of February 1976 had an estimated fair market value of $254,235.60."

" *
'SEC. 6321. LIEN FOR TAXES.

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.' "

The government claims that Baldwin, in reserving (1) the right to receive the income of the trust for his life, (2) the right, upon his death, to appoint the trust property to anyone by will, and (3) the right to manage the trust assets (by reserving the right to name himself trustee), has retained all the substantial incidents of ownership of the trust property. To support this contention, the government cites the Restatement of Property § 328 (1940):

> "When a person transfers property in trust for himself for life and reserves a *general* power to appoint the remainder and creates no other beneficial interests which he cannot destroy by exercising the power, the property, though the power is unexercised, can be subjected to the payment of the claims of creditors of such person and claims against his estate to whatever extent other available property is insufficient for that purpose." (Emphasis supplied.)

The government argues that, under *Wyeth v. Safe Dep. & Tr. Co.,* 176 Md. 369, 4 A. 2d 753 (1939), Baldwin's retained power to appoint the trust corpus by will is a general power, *i.e.,* one exercisable in favor of his creditors or his estate.

The appellees contend that Baldwin has reserved only a special or limited power of appointment over the trust corpus under Maryland law, that § 328 of the Restatement is therefore inapplicable, and that our decision in *Trust Co. v. Bergdorf Etc., Co.,* 167 Md. 158, 173 A. 31 (1934), controls this case. They maintain that the rights reserved by Baldwin under the trust instrument do not amount to "property" or "rights to property" in the trust corpus, because Baldwin, as donee of a special power, has no proprietary interest in the trust corpus and cannot appoint it to his estate or his creditors.

In answering the certified question, we must first determine whether the power of appointment reserved by Baldwin was a general power exercisable in favor of his estate or creditors, as the government suggests, or whether, as appellees argue, the power retained was a special or limited one.

In the trust instrument, Baldwin retained the power, upon his death, to appoint the trust corpus "to such person or persons in such manner and upon such limitations, whether upon trust or otherwise, as the Settlor by his Last Will and Testament may designate and appoint." It has long been the rule in Maryland that such language creates a special or limited power in the donee. See, *e.g., Balls v. Dampman,* 69 Md. 390, 391, 16 A. 16, 17 (1888), holding that the donee of a power to appoint property by will "in such manner as she may see fit" could not appoint to her creditors, nor could her creditors reach the property in the hands of the appointees. To create a general power of appointment under Maryland law, the donor must employ language *specifically* authorizing the donee to appoint property to his estate or creditors. *Frank v. Frank,* 253 Md. 413, 415, 253 A. 2d 377, 379 (1969). *Accord, Pierpont v. C.I.R.,* 336 F. 2d 277 (4th Cir. 1964), *cert. denied,* 380 U. S. 908 (1965); *Trust Co. v. Bergdorf, Etc., Co.,* 167 Md. 158, 173 A. 31 (1934); *Pope v. Safe Dep. & Tr. Co.,* 163 Md. 239, 161 A. 404 (1932). See 61 Op. Att'y Gen. 846, 848 (1976). While conceding that this is the general rule in Maryland, the government argues that the decision of our predecessors in *Wyeth* establishes that where the donor and donee of the

power are the same, no specific enabling language is necessary to create a general power of appointment. We disagree.

In *Pope v. Safe Dep. & Tr. Co.,* 163 Md. 239, 243, 161 A. 404, 405 (1932), the settlor of a trust reserved the net income for life and a power to appoint "to the use of such person or persons" as he designated in his will. The settlor exercised his power. The Court held that the appointed property passed by the deed creating the power rather than by the will in which the power was exercised. In characterizing the nature of the donor-donee's interest in the trust property, it said:

> "As the equitable life tenant the tenant, *qua* tenant, could assign, release, or incumber his life estate or have it subjected to the payment of his debts, but in no proprietary capacity could he alienate, bargain and sell, bequeath or devise the property which might be appointed. [citations omitted] Neither, if there were no fraud associated with the execution of the deed, could this property or estate arising upon the termination of his life be made subject to the claims of the appointor's creditors, whether in bankruptcy, insolvency, or otherwise; nor could it be taken by them in attachment or execution. *Balls v. Dampman* ...." 163 Md. at 246, 161 A. at 406-07.

In sum, the settlor in *Pope,* by retaining a life income interest and a power of appointment over the trust corpus, had not reserved an "estate in the subject-matter of the power" which could pass under his will. 163 Md. at 245, 161 A. at 406.

Applying these principles to a fact situation similar to that in the instant case, the Court, in *Trust Co. v. Bergdorf, Etc., Co.,* 167 Md. 158, 173 A. 31 (1934), refused to allow the settlor's creditors to reach the corpus of an irrevocable trust. In that case, the settlor created an irrevocable inter vivos trust, retaining a life estate in the trust assets and a power to appoint "to such persons in such shares and proportions ... and upon such terms and conditions," as she might designate in her last will and testament. *Id.* at 159, 173 A. at

32. The takers in default of appointment were her lawful issue living at the time of her death. When a judgment creditor of the settlor sought to compel the trustee to sell part of the trust corpus to satisfy the settlor's debt, we held that the settlor had retained no estate in the trust corpus which could be reached by her creditors. We said:

> "As further evidence that there was no retention of ownership or dominion over the property which could be exercised in the lifetime of the settlor, there was an immediate vesting of the remainder in the next of kin of the settlor, subject to the contingency of children being born to her. And the immediate vesting of the remainder was not affected by the fact that the estate in remainder so held might be defeated by the exercise of the power of appointment. . . .
>
> ". . . With the ownership of the corpus in the remaindermen, even though the possession may be delayed or defeated by the will of the donor, there being no evidence of fraud in the inception of the trust, and none in the instrument creating it, the corpus cannot be attached to satisfy the creditors of the settlor. . . ." 167 Md. at 165-66, 173 A. at 34.

It is thus clear that under *Pope,* Baldwin's retained testamentary power of appointment is not an estate in the subject matter of the power. It is equally clear from *Bergdorf* that takers in default of appointment become immediately vested, subject to divestment and that Baldwin may not therefore exercise his power in favor of his creditors, nor may creditors attach the property subject to the power.

*Wyeth v. Safe Dep. & Tr. Co.,* 176 Md. 369, 4 A. 2d 753 (1939), upon which the government relies, is distinguishable from the foregoing cases and from the instant case. There, the settlor executed a trust of all her property, reserving the income for life, and the right to terminate the trust upon 30 days' notice to the trustee. In addition, she reserved the power to appoint the trust corpus "for such uses as I may by last will and testament appoint." The takers in default of

appointment were her legal heirs and next of kin. In her will, the settlor-testatrix declared her intention "to execute the power of appointment reserved by me" and "also to dispose of all my property, real and personal, owned by me in my individual right." Among other specific bequests, she included a $200 bequest to her brother, and she directed that any debts she owed him were to be paid in full. At the time of her death, her indebtedness to her brother exceeded $9000, while her net individual estate (apart from the trust corpus) was $550. The issue in *Wyeth* was whether the settlor-testatrix had validly exercised her power of appointment so that the assets of the trust ($15,898.21) could be used to pay the debt to her brother. Our predecessors observed:

> "[T]he will itself and the situation of the testatrix at the time of her death, when considered in the light of her circumstances at the time of its execution, must guide us in arriving at an answer. It is seen that the testatrix, in order to accomplish the purposes and objects expressed in her will, fully realized the inadequacy of her individual estate; furthermore she must have anticipated that if she had long to live, her individual estate would be entirely consumed, and this is practically what happened, for notwithstanding her withdrawal from the trust funds of almost $5000, and the loans from her brother, amounting with interest to more than $9000, her gross individual estate deducted from the above sums shows a deficiency in excess of $11,000. Accordingly, in order to have her brother's indebtedness paid at her death and to provide for those whom she considered to be the just objects of her bounty, she adopted a method which to her seemed simple, convenient and expedient by blending the trust estate with her individual estate and executed a will with intent to dispose of the estates thus combined . . . ." 176 Md. at 374-75, 4 A. 2d at 755.

Moreover, in *Wyeth,* the settlor had partially exercised her right to revoke the trust by withdrawing from it over $4900 during her lifetime, thus indicating that she did not intend to restrict her own use of the trust assets, either during her life or after her death, so as to preclude her disposal of the assets to satisfy her debts. The Court cited *Pope* and *Bergdorf* as illustrations of cases where "the powers themselves were limited in such manner as to prevent the donee from exercising them as he could have done with his individual estate." 176 Md. at 376, 4 A. 2d at 756. Since the power was exercised in *Wyeth,* the Court properly resolved any doubts in favor of the valid execution of the power to effectuate the testatrix's obvious intent that her brother be repaid. Recognizing that "the position of creditors holding claims against the estate of one who has the power to appoint under a deed of trust, but fails to exercise it in their favor, is vastly different from that of creditors and other persons who are appointed by the donee," 176 Md. at 376, 4 A. 2d at 756, we conclude that *Wyeth* is inapplicable to the facts before us.

The government urges that dictum in *Frank v. Frank,* 253 Md. 413, 415, 253 A. 2d 377, 379 (1969), citing *Wyeth* for the proposition that "where the donee and donor of the power are the same person, an appointment may be made to a creditor," signals a retreat from the holdings of *Bergdorf* and *Pope. Frank* concerned the construction of a power of appointment bequeathed by a husband to his wife for purposes of the federal estate tax marital deduction, and thus the quoted statement is not relevant to the case's holding. Further, we are not here asked to validate the exercise of an appointment, as was the Court in *Wyeth.*

We conclude that, since *Bergdorf* presents a fact situation virtually indistinguishable from that presently before us, and since *Wyeth* does not limit *Bergdorf's* applicability to such facts, the principles of *Bergdorf* compel the conclusion that Baldwin retained only a special, or limited testamentary power of appointment over the trust corpus, not exercisable in favor of his creditors.[1]

---

1. Nothing in Darnall v. Connor, 161 Md. 210, 155 A. 894 (1931), supports a contrary conclusion. In that case the Court held that property which the

Whether this special testamentary power, which under *Pope* and its progeny does not in itself constitute an "estate" in the trust corpus, nevertheless, in combination with the other reserved rights, raises Baldwin's interest in the trust corpus to "property" or "rights to property" is a question we answer in the negative. As already noted, the donee of a special testamentary power may not sell, bequeath, alienate or devise the appointive property in a proprietary capacity. Nor may he enter into a contract that fetters the exercise of the power. *O'Hara v. O'Hara,* 185 Md. 321, 44 A. 2d 813 (1945). The fact that Baldwin's special testamentary power is coupled with a reserved life interest in the income from the trust does not raise his interest in the trust corpus to "property," although his life estate is a property right in the trust income. *Bergdorf; Pope.* Further, Baldwin's retained right to appoint anyone, including himself, as trustee does not confer upon him ownership of the trust property. Provided that a settlor's words or acts clearly demonstrate his intention to hold property as trustee for the benefit of himself and others, he may create a trust of his own property and name himself trustee. *Sieling v. Sieling,* 151 Md. 536, 550, 135 A. 376, 382 (1926). Since Baldwin has retained no right to revoke the trust, or to appoint the corpus by deed, he would not be the sole beneficiary of the trust even if he appointed himself trustee. As trustee, Baldwin would have the same fiduciary duties as any other trustee to the takers in default, who have a vested remainder in the trust corpus, subject to divestment by Baldwin's exercise of his testamentary power. *Bergdorf; Johnson v. Webster,* 168 Md. 568, 179 A. 831 (1935). Consequently, our answer to the certified question is that the settlor of an irrevocable trust, reserving to himself only the right to receive, during his lifetime, the income from the investments and other personalty of the trust does not have

---

settlor-testatrix bequeathed under a reserved special testamentary power of appointment was subject to a collateral inheritance tax. To effectuate the known legislative intent, the Court construed the tax statute broadly, and it later recognized that the case was of little general applicability. *See Pope,* 163 Md. at 248, 161 A. at 407.

such an estate in the corpus thereof as constitutes "property and rights to property" under Maryland law.

> *Question of law answered as herein set forth; costs to be evenly divided.*